UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OVATION HOLDINGS, INC.; and
ENCORE BANK, N.A.,

    Plaintiffs,

CASE NO: 8:15-cv-01792-JDW-AEP

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY NO.
BPB-1213N0-00001;

AUL 1274 ANTARES a/k/a LLOYD'S
SYNDICATE 1274 a/k/a ANTARES SYNDICATE
1274;

9562 BARBICAN FINANCIAL &
PROFESSIONAL LINES CONSORTIUM a/k/a
LPSO REGISTERED CONSORTIUM 9562;

LLOYDS'S SYNDICATE 1955 a/k/a
BARBICAN SYNDICATE 1955;

LLOYD'S SYNDICATE 5151 a/k/a
MONTPELIER SYNDICATE 5151; and

MONTPELIER CAPITAL LIMITED.

    Defendant.
_____/

## UNDERWRITERS' MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

COME NOW Defendants, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. BPB-1213n0-P00001[1] and MONTPELIER CAPITAL

---

[1] The individually named syndicate defendants, including AUL 1274 Antares a/k/a Lloyd's Syndicate 1274 a/k/a Antares Syndicate 1274; 9562 Barbican Financial & Professional Lines Consortium a/k/a LPSO Registered Consortium 9562; Lloyds's Syndicate 1955 a/k/a Barbican Syndicate 1955; and Lloyd's Syndicate 5151 a/k/a Montpelier Syndicate 5151, subscribe to policy No. BPB-1213n0-P00001.

LIMITED n/k/a Endurance Corporate Capital Ltd. ("Underwriters"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and hereby move the Court for an Order dismissing the Complaint for Declaratory Relief and Damages ("Complaint") filed by the Plaintiffs, OVATION HOLDINGS, INC. ("Ovation") and ENCORE BANK, N.A. ("Encore") (collectively, "Plaintiffs"), for the failure of the Plaintiffs to state a claim upon which relief may be granted.

## INTRODUCTION

Fed. R. Civ. P. 12(b)(6) permits the Court to dismiss a complaint that fails to state a claim upon which relief can be granted. On a motion to dismiss, the Court must accept a plaintiff's "well-pled" facts as true; yet "the court is not required to accept a plaintiff's legal conclusions." *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009)(citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs fail to meet their burden to allege facts sufficient to grant relief. Based upon the allegations pled, the Complaint must be dismissed for three independent reasons:

1. Plaintiffs' Complaint fails to plead any allegations that would entitle relief in favor of Ovation. Specifically, the Complaint fails to plead that: (1) Ovation sustained a loss, (2) Ovation submitted an insurance claim to Underwriters under the financial institution bond issued by Underwriters[2] and (3) that Ovation was damaged in any way by Underwriters' conduct. Given that Plaintiffs' Complaint fails to plead any material allegations in relation to Ovation, the Complaint must be dismissed as to Ovation.

---

[2] Financial Institution Bond Policy No. BPB-1213n0-P00001, hereinafter the "Bond." The Bond is incorrectly identified in the Complaint as Policy No. BPB-1213n0-00001.

2. Plaintiffs' Complaint improperly names as defendants the Lloyd's syndicates subscribing to the Bond. Courts have routinely recognized that the various syndicates of Lloyd's, London, such as those subscribing to the Bond at issue, are not legal entities from which recovery can be sought individually. Rather, they are unincorporated associations that cannot sue or be sued.

3. Plaintiffs improperly allege a bad faith claim against Underwriters. This Count must be dismissed as it is: (1) an improper attempt to bring a cause of action that does not exist in Florida; (2) premature; (3) a claim over which this court lacks subject matter jurisdiction; and (4) duplicative of Plaintiffs' breach of contract claim.

For each of these independent reasons, the Complaint should be dismissed.

## FACTUAL BACKGROUND

Plaintiffs Ovation and Encore are named insureds under a financial institution bond, issued for the term December 31, 2013 to December 31, 2014. *(Dkt. No. 1, ¶36).* The Complaint seeks declaratory relief for coverage under the Bond based upon diversity jurisdiction. *(Dkt. No. 1).* Plaintiffs have attached the Bond to the Complaint as Exhibit "A". *(Dkt. No. 1 ¶2, Dkt. No. 5-1).*

The Complaint alleges that, in reliance on forged USDA Assignment Guarantee Agreements, Encore purchased $4,825,603.63 in shares of loans originated by First Farmers Financial, LLC ("First Farmers"). *(Dkt. No. 1, ¶20, 30-35).* The Complaint alleges further that "as a direct result of Encore's reliance on the forgery, it lost almost $5 million it paid to purchase the loans originated by First Farmers." *(Dkt. No. 1, ¶35).* The Complaint alleges that Encore is entitled to coverage under one or more of the Insuring Agreements of the Bond for the resulting loss. *(Dkt. No. 1, ¶38).*

The Bond contains a choice-of-law provision applying Florida law. *(Dkt. No. 5-1, pg. 11).* Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 Sol 2d 306 (Fla. 2000) *citing Punzi v. Shaker Adver. Agency, Inc.,* 601 So.2d 599 (Fla. 2d DCA 1992).[3] As such, Florida law applies to this matter.

## ARGUMENT

I. **PLAINTIFFS' COMPLAINT FAILS TO PLEAD FACTS THAT WOULD SUPPORT RELIEF IN FAVOR OF OVATION**

Under Rule 12(b)(6), in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to survive a motion to dismiss, a plaintiff's complaint is "obligated to provide the factual 'grounds' for his entitlement to relief." *Perret v. Wyndham Vacation Resorts, Inc.,* 889 F. Supp. 2d 1333, 1340 (S.D. Fla. 2012) (dismissing complaint that included claims for breach of contract, bad faith, and declaratory relief where plaintiffs failed to plead specific facts supporting elements of each claim). In the case of a claim for breach of contract, a plaintiff must plead facts showing the existence of: (1) a valid contract; (2) a material breach; and (3) damages. *Dodd v. Woods,* No. 809CV1872T27AEP, 2010 WL 3747007, at *6 (M.D. Fla. Aug. 31, 2010) (dismissing complaint for breach of contract where the complaint failed to even allege the existence of a contract between the plaintiff and the defendant). Plaintiffs' Complaint must be dismissed because it fails to plead facts sufficient to state a plausible claim as to Ovation.

---

[3] Federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state, including its choice of law rules. *Westerman v. Sears, Roebuck & Co*., 577 F.2d 873, 878 (5th Cir.1978). Under Florida law, a contractual choice-of-law provision is enforceable "unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Techs., Inc*., 433 F.3d 1337, 1341 (11th Cir.2005).

A review of Plaintiffs' Complaint reveals no factual allegations that would warrant relief in favor of Ovation. *(Dkt. No. 1).* Beyond naming Ovation as a Plaintiff and stating that Ovation is named an insured under the Bond, the Complaint contains no other references to Ovation. *(Dkt. No. 1).* Specifically, the Complaint fails to plead that: (1) Ovation sustained a loss, (2) Ovation submitted an insurance claim to Underwriters under the Bond or (3) that Ovation was damaged in any way by Underwriters' conduct. *(Dkt. No. 1).* Moreover, Plaintiffs fail to include Ovation in their prayers for relief in any of their three alleged causes of action. *(Dkt. No. 1, pgs. 11-13).*

The Complaint fails to allege any material allegations as to Ovation because, according to the Complaint, Encore sustained the claimed loss. The Complaint alleges that Encore is a Florida corporation that is named an insured under the Bond. *(Dkt. No. 1, ¶5, 14).* The Complaint alleges further that "as a direct result of Encore's reliance on the forgery, it lost almost $5 million it paid to purchase the loans originated by First Farmers." *(Dkt. No. 1, ¶35).* The Complaint does not allege that Ovation was a party to the loan purchases, or that it sustained a loss related to the loan purchases, or that it made a claim to Underwriters for losses related to the loan purchases. *(Dkt. No. 1, ¶20, 30-35).* Given that Plaintiffs' Complaint fails to plead any facts in relation to Ovation, the Complaint must be dismissed as to Ovation.

## II. PLAINTIFFS' COMPLAINT IMPROPERLY NAMES INDIVIDUAL SYNDICATES AS DEFENDANTS

The Complaint properly names Underwriters as defendants,[4] but the Complaint also attempts improperly to assert claims separately against Lloyd's syndicates.[5] United States courts

---

[4] Underwriters acknowledge that the correct insurer party to this litigation is Certain Underwriters at Lloyd's, London Subscribing to Policy No. BPB-1213n0-P00001, although the Complaint misstates the Policy No. as BPB-1213n0-00001. Defendant Montpelier Capital Limited (which is now known as Endurance Corporate Capital Ltd.) is one of the Underwriters subscribing to the policy. It is a corporate underwriting member of Syndicate 5151.

have repeatedly recognized that the various syndicates affiliated with Lloyd's, London, such as those subscribing to the Bond at issue, are not legal entities from which recovery can be sought individually. Rather, the Lloyd's syndicates are unincorporated associations that have no legal standing to sue or be sued.

Lloyd's, London, is not an insurance company, but rather is an exchange or market where various entities bid on the right to insure a given risk. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Surety Co.,* 177 F.3d 210, 221 (3rd Cir. 1999). Those entities consist of unincorporated groups of investors, called syndicates, who appoint agents, called underwriters, to act on their behalf. *Certain Underwriters at Lloyd's London England v. Layne,* 26 F.3d 39, 41-42 (6th Cir. 1994). There are more than four hundred syndicates, which are comprised of some 30,000 member-investors, sometimes called "underwriters" or "names," who hope to share in any profit the syndicate might make. *Layne,* 26 F.3d at 42, *citing Daly v. Lime Street Underwriting Agencies Ltd.,* 2 FTLR 277, 279 (Q.B. 1987).

The Lloyd's syndicates, formed under the law of Great Britain, are unincorporated associations that do not constitute legal entities under British law. *See Chemical Leaman*, 177 F.3d at 221 ("[Lloyd's] Syndicates are not legal entities."); *E. R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 929 (2d Cir. 1998) ("[The Lloyd's] syndicates themselves have been said to have no independent legal identity"); *Humm v. Lombard World Trade, Inc.,* 916 F. Supp. 291, 299 (S.D. N.Y. 1996) ("Lloyd's syndicates are not recognized as legal entities under British law."); *Roby v. Corporation of Lloyd's,* 796 F. Supp. 103, 105 (S.D. N.Y. 1992) ("It is undisputed that under the law of England, the syndicates do not constitute legal entities.").

---

[5] Plaintiffs name the following syndicates as defendants: AUL 1274 Antares a/k/a Lloyd's Syndicate 1274 a/k/a Antares Syndicate 1274; 9562 Barbican Financial & Professional Lines Consortium a/k/a LPSO Registered Consortium 9562; Lloyds's Syndicate 1955 a/k/a Barbican Syndicate 1955; and Lloyd's Syndicate 5151 a/k/a Montpelier Syndicate 5151.

Consistent with British law, United States courts have recognized that Lloyd's syndicates are comprised of unincorporated associations, which lack the legal capacity to be sued. *See, e.g., Roby,* 796 F. Supp. 103 at 111; *Youell v. Grimes,* 203 F.R.D. 503, 509 (D. Kan. 2001); *Indiana Gas Co., Inc. v. Home Ins. Co.,* 141 F.3d 314, 317-18 (7th Cir. 1998); *Advani Enters., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 160 (2d Cir. 1998); *McAuslin v. Grinnell Corp.,* No. CIV. A. 97-775, 2000 WL 1059850, *4 (E.D. La. Aug. 1, 2000); *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.,* 62 F. Supp. 2d 1116, 1129 (S.D. N.Y. 1999).

The *Youell* decision is particularly instructive on this issue. In *Youell,* the District of Kansas was asked to determine whether a syndicate subscribing to a directors and officers insurance policy could be named as a counterclaim defendant. *Youell,* 203 F.R.D. at 505. The *Youell* court, after reviewing the well established law finding that Lloyd's syndicates are unincorporated associations, held that a syndicate is not a legal entity that could be sued under either British or United States law. *Id.* at 509. The court held that "an unincorporated association is not a legal entity and can neither sue or be sued in the name of the association." *Id.* at 508-509.

Consistent with *Youell* and the law in other jurisdictions, Florida state and federal courts have held that unincorporated associations lack the capacity to either sue or be sued. *See, e.g., Larkin v. Buranowsky,* 973 So.2d 1286 (Fla. 4th DCA 2008); *Teamsters for Democracy v. Padvano,* 79-3320-CIV, 1979 WL 1931 (S.D. Fla. Sept. 4, 1979). For example, in *Larkin v. Buranowsky,* the Fourth District affirmed the trial court's dismissal of causes of action against two federal political organizations after finding they were unincorporated associations, which lacked the capacity to be sued in their own names. *Larkin,* 973 So.2d at 1286. Similarly, in *Teamsters for Democracy v. Padvano,* the Southern District of Florida court found that an

unincorporated association lacked standing to sue for declaratory and injunctive relief under Florida state law. *Teamsters,* 1979 WL 1931, at *13.

Under *Youell* and the other well established law analyzed above, the syndicates of Lloyd's, London subscribing to the Bond at issue cannot be sued individually. The syndicates are unincorporated associations which cannot sue or be sued under either British or Florida law. Thus, the Complaint's allegations against the syndicates must be dismissed.[6]

### III. PLAINTIFFS' COMPLAINT IMPROPERLY ALLEGES BAD FAITH AGAINST UNDERWRITERS

Count III alleges bad faith against Underwriters. This Count must be dismissed in its entirety as it is: (1) an improper attempt to bring a cause of action that does not exist in Florida; (2) premature; (3) a claim over which this court lacks subject matter jurisdiction; and (4) duplicative of Plaintiffs' breach of contract claim.

#### A. Florida Law Does Not Recognize a First-Party Common Law Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count III of its Complaint, Plaintiffs claim that "There is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *(Dkt. No. 1, ¶57).* Plaintiffs contend that Underwriters breached its duty of good faith by "failing to adequately investigate the circumstances of Encore's loss and by unreasonably denying indemnity to Encore without reasonable basis and contrary to the applicable bond language." *(Dkt. No. 1, ¶58).* This Count is an attempt to improperly assert a common law claim for the breach of implied duty of good faith, which has been rejected by the Florida Supreme Court.

---

[6] Courts have held that it is proper to caption an action under a Lloyd's London policy as "Certain Underwriters at Lloyd's, London Subscribing to Policy No." because the underwriting entities actually insure the risks, while the syndicates do not. *See Certain Underwriters at Lloyd's, London Subscribing to Policy No. GL2918-028 v. Wenhaven, Inc.*, No. 2014-03, 2014 U.S. Dist. LEXIS 129068, *9 (Dist. U.S.V.I. Sept. 16, 2014).

8

In *Chalfonte Condo Apt. Ass'n, Inc. v. QBE Ins. Corp.*, the Florida Supreme Court held that there is no viable cause of action for breach of the implied covenant of good faith and fair dealing in the first-party insurance context. *Chalfonte Condo Apt. Ass'n, Inc. v. QBE Ins. Corp.*, 94 So.3d 541, 548-549 (Fla. 2012). The Court held that there is no common law action for breach of the implied warranty of good faith and fair dealing in the first-party coverage context, and the only remedy available is the statutory bad-faith action created by section 624.155. *Id.* at 550. The court also held that Florida does not recognize an action for first-party common law bad faith. *Id.* at 547. Based on *Chalfonte,* Count III of Plaintiffs' Complaint fails to state a claim for which relief can be granted.

> **B.** **A Statutory Bad Faith Claim Is Premature**

In the event Plaintiffs attempt to contend that Count III is an action for statutory bad-faith, Florida Courts have repeatedly and consistently held that a statutory claim for bad faith is not ripe until coverage issues have been resolved. *See, e.g., Cabrera v. MGA Ins. Co., Inc.,* No. 2:13-CV-666-FTM-38, 2014 WL 868991, at *3-4 (M.D. Fla. Mar. 5, 2014); *Trianon Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 741 F. Supp. 2d 1327, 1334 (S.D. Fla. 2010); *Lime Bay Condo. Inc. v. State Farm Florida Ins. Co.,* 94 So. 3d 698 (Fla. 4th DCA 2012). In the context of a claim for bad faith by an insured against an insurer, both Florida's state and federal courts have made clear such claim must be dismissed without prejudice and re-filed *after* there is a determination of liability owed on the first party insurance contract and the extent of damages. In *Cabrera,* the court made clear that the plaintiff in a bad faith action "must allege that there has been a determination not only of the amount of damages, but also that the insurance contract actually covered those damages," and dismissed Plaintiffs' claim for Bad Faith in that action because

9

Plaintiffs had "not directly pled the prerequisites for filing a Bad Faith action." *Cabrera,* 2014 WL 868991, at *4.

In the current action, Plaintiffs admit that Underwriters have only denied their claim, and are now seeking a declaration as to coverage. *(Dkt. No. 1, ¶44).* There has been no determination of liability owed by Underwriters under the Bond, or the extent of damages. Since there has been no finding of liability, the action is not ripe for a statutory bad faith action. This Court has held that such premature, unripe claims must be dismissed. *See Bele v. 21st Century Centennial Ins. Co.,* No. 6:15-CV-526-ORL-40 (M.D. Fla. September 1, 2015) (Order attached as Exhibit "A") (Court ruled that "[b]ringing a premature bad-faith claim is contrary to the Federal Rules of Civil Procedure" and that "until a bad-faith claim has a factual basis to support it – i.e., the plaintiff's claim for UM benefits has been resolved in the plaintiff's favor—such claim is prematurely brought" and should be dismissed without prejudice).

### C. The Court Lacks Subject Matter Jurisdiction Over A Bad Faith Claim

Additionally, in the event Plaintiffs attempt to contend that Count III is an action for statutory bad-faith, dismissal of Plaintiff's claim is also required because this Court lacks subject matter jurisdiction over a claim that is not ripe. *Novak v. Safeco Ins. Co. of Illinois*, No. 6:15-CV-215-ORL-41, 2015 WL 1456648, at *2 (M.D. Fla. Mar. 30, 2015) (where "Plaintiffs' bad faith claim is not yet ripe[,] the Court [is] required to dismiss the claim without prejudice for want of subject-matter jurisdiction"); *Alilin v. State Farm Mut. Auto. Ins. Co.,* No. 6:14-CV-1183-ORL, 2014 WL 7734262, at *6 (M.D. Fla. Jan. 30, 2014) ("Plaintiff's bad faith claim is not ripe and this Court lacks jurisdiction over it."). Federal courts are courts of limited jurisdiction; therefore, when a diversity case is before the court, plaintiff bears the burden of establishing the Article III prerequisites to jurisdiction. *Alilin*, 2014 WL 7734262, at *5 (*citing Westchester Fire*

*Ins. Co. v. Punit Corp.*, No. 303CV188/MCR, 2006 WL 3755198, at *2-3 (N.D. Fla. Dec. 19, 2006)). Plaintiffs must establish that its claim is ripe for adjudication. *Id.* Plaintiffs' Count III is contingent upon the occurrence of an event that may *or may not* occur. Thus, Count III is not ripe, and therefore this Court lacks subject matter jurisdiction and dismissal of Count III is warranted.

### D. Plaintiffs' Bad Faith Claim is Duplicative of Their Breach of Contract Claim

In Count III, Plaintiffs allege that Underwriters breached their duty of good faith by "unreasonably denying indemnity to Encore without reasonable basis and contrary to the applicable bond language," and "unreasonably denied coverage under the bond." *(Dkt. No. 1, ¶58, 59).* However, in Plaintiffs' Second Cause of Action ("Count II"), Plaintiffs assert a claim for breach of contract, claiming that Underwriters breached the Bond by failing to pay amounts due under the contract. *(Dkt. No. 1, ¶53-55).* Where, as here, a claim for bad faith is duplicative of a breach of contract action, it should be dismissed. *Trief v. American General Life Ins. Co.*, 444 F.Supp.2d 1268, 1270 (S.D. Fla. 2006) (dismissing claims for breaching the implied warranty of good faith and fair dealing by "wrongfully and carelessly" failing to pay insurance claim, which "amount[ed] to nothing more than general allegations for breach of contract and are therefore duplicative of [the breach of contract claim]"); *See also Amica Mutual Insurance Co. v. Morowitz,* 613 F.Supp.2dd 1358 (S.D. Fla. 2009). Given the Complaint's bad faith claim tracks the allegations of the breach of contract claim, it should be dismissed as duplicative.

## IV. CONCLUSION

WHEREFORE, for the reasons explained herein, Underwriters respectfully request that this Court grant its Motion to Dismiss Plaintiffs' Complaint for failure state a claim upon which relief can be granted.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 0879827
wlewis@butler.legal
Secondary: eservice@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Attorneys for Defendants,* CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. BPB-1213n0-P00001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 10, 2015, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system. I further certify that a true and correct copy of the foregoing has been furnished this day via Electronic Mail to:

> Kenneth H. Haney, Esq.
> Keely F. Morton, Esq.
> QUARLES & BRADY LLP
> 1395 Panther Lane, Suite 300
> Naples, FL 34109-7874
> keely.morton@quarles.com
> *Attorneys for Plaintiffs, Ovation Holdings, Inc. and Encore Bank, N.A.*

WILLIAM R. LEWIS, ESQ.